# NEW YORK COMMON PLEAS.

CHARLES DEVLIN agt. THE MAYOR, &c., OF NEW YORK, and others.

*Unconstitutional law — tax levy act of 1860, for New York City, void as to cleaning streets.*

The provision of the tax levy act of 1860, authorizing the mayor and common council of the city of New York, to make contracts for cleaning the streets of said city, according to the terms and conditions prescribed by said act, is unconstitutional and void.

And such contracts cannot be inforced by the contractors or their assignees and successors.

If such a contract was valid, the contractor would have no right to assign it to others without the express sanction of the common council.

*General Term, November,* 1874.

APPEAL from judgment entered upon report of referee, in this court, in favor of plaintiff, Charles Devlin, for $63,698.55, against the defendants, The Mayor, &c., of New York; and judgments in favor of defendant, Samuel Donaldson, for $213,140.17; defendant, Anthony S. Hope, for $18,779.10; defendant, Tilly R. Pratt, for $53,359.90, and defendant, Charles D. Blish, for $106,719.81, and defendant, Thomas Hope, for $39,375.54, all against the defendants, The Mayor, &c., of New York.

J. F. DALY, *J.* — The contract for cleaning the streets of the city of New York, commonly known as the Hackley contract, on which this action is brought, was made on February 26th, 1861, between the mayor, aldermen and commonalty of the city of New York, of the one part, and Andrew J. Hack-

ley, of the other, and provided that Hackley should sweep the streets, &c., as set forth in the contract, for five years from the date thereof, and should receive therefor the sum of $279,000 per annum, in semi-monthly installments. The contract was awarded to Hackley by a vote of the common council of the city of New York, with the approval of the Mayor, after advertisement by the city inspector for proposals, pursuant to resolution of the common council, passed December 15, 1860, and after thirty-one bids had been received and opened, on December 29, 1860, in presence of the comptroller, and transmitted to the common council.

It appears by the proofs offered by plaintiff, that this contract was made in pursuance of authority supposed to be conferred upon the common council by the act of the legislature passed April 17, 1860 (*chapter* 509, *Laws of* 1860, *sec.* 4). That act is entitled, " An act to enable the supervisors of the county of New York to raise money by tax for city purposes, and to regulate the expenditure thereof; and authorizing the board of supervisors of the county of New York to levy a tax for county purposes, and to regulate the expenditure thereof, and also to borrow money in anticipation of the collection of the said tax, and to issue county revenue bonds therefor.

The first section of the act empowers the board of supervisors, as soon as conveniently may be after the passage of the act, to levy and raise by tax a sum not exceeding $4,477,719.59 on account of the corporation of the city of New York, for the following purposes, and among others : " Cleaning streets, $300,000."

The fourth section of the act provides that, " The appropriation hereinbefore provided and authorized for the cleaning of streets shall apply upon any authorized agreement or contract entered into for any term of years not exceeding five ; and it is hereby declared lawful for the mayor and common council to authorize and make, or cause to be made, any agreement or agreements, contract or contracts, for cleaning

the streets of the city of New York, and to which the said or kindred appropriations apply, for and during a term of years not to exceed five.  *  *  *  The proposals for said contracts shall be advertised in such newspapers as may be designated by said common council, and the contract or contracts shall be awarded as in the judgment of the mayor and common council shall be for the interest of the city.   The work under said contract or contracts shall be performed under the supervision of the city inspector.   The party or parties to whom such contract or contracts may be awarded shall give such surety as may be prescribed by the mayor and comptroller."

The act in question is the familiar " Tax Levy " of the year 1860 for the city and county, and these " tax levies " have been adjudged to be local acts (49 *N. Y.*, 133, *and cases cited ;* 47 *N. Y.*, 501; 38 *N. Y.*, 193, *and cases cited*).   The object of the act, as expressed in its title, is to raise money for city and county purposes, and to regulate the expenditure thereof, and to borrow money in anticipation of the tax levied under the act, and issue revenue bonds therefor.   Any provisions of the act upon subjects not expressed in the title, nor necessary to carry out the objects of the act, would be unconstitutional and void (*Huber* agt. *The People*, 49 *N. Y.*, 132 ; *People* agt. *O'Brien*, 38 *N. Y.*, 193, *above cited*).   Such a provision, it seems to me, is that authorizing the mayor and common council to make a contract of the kind described in the fourth section of the act for cleaning streets.   It was proper for the legislature to declare that the $300,000 appropriated for cleaning streets should apply upon any authorized agreement or contract entered into therefor, for any term of years not exceeding five ; because that provision regulated the expenditure of the sum appropriated.   But it was not necessary, in order to carry out such provision, that the legislature should, in the same act, provide for the making of a contract for an indefinite sum and for a longer period than one year, nor prescribe a mode of advertising for proposals,

nor awarding the contract, nor for taking security in a mode different from that provided for by the charter then in force. The appropriation for cleaning streets was to be applied upon an "authorized" contract. But this did not necessitate the incorporating of the authority for the contract in the tax levy. Even if it did, the provision could go no further than authorizing a contract involving the expenditure in the aggregate of the sum actually appropriated for the purpose, and to be advertised for and awarded as the charter directed. The effect of this provision on the other hand was to authorize a contract to be made for a term of five years, at a yearly outlay for the whole period absolutely limitless in amount. If such authority could be conferred upon the pretense that it was a regulation of the expenditure of $300,000, or was necessary to carry out the provisions of the act appropriating $300,000 to clean the streets, then it would be lawful for the legislature to add to each item of appropriation in the annual tax levy an authority to the officers of the corporation to contract for expending a much greater amount for any number of years afterward without any of those restrictions and limitations which the charter provides. The result would be that each tax levy, under pretense of being a mere authority to raise money to carry on the municipal government for the current year, and regulate the expenditure of the money so raised, would become authority for binding the city for successive years to the payment of whatever sums the municipal officers might choose to contract to pay, and would, in addition to this, alter or repeal the provisions of the charter intended as safeguards for the tax-payers, and limitations of the power of the local officers. Nothing in the title of the act is notice that any restrictions upon the mode of expending money and making contracts contained in the charter were abrogated, nor that authority was conferred on the mayor and common council to bind the city for a term of years to pay annually any sum which, in their discretion, they might choose to contract to pay for cleaning the streets of the city.

We are not left to conjecture what the results of such legislation might be. The mayor and common council proceeded, under the provision quoted, to enter into a contract with Hackley to pay him $279,000 per annum for five years for cleaning the streets. Was this the regulation of the expenditure of the $300,000 appropriated, and ordered to be levied and raised by tax for cleaning the streets of the city? The city charter, section 38 (*Laws of* 1857, *chap.* 446), provides that all contracts shall be given to the lowest bidder, and he shall give security for the faithful performance of his contract in the manner prescribed and required by ordinance. The tax levy act under consideration, on the other hand, provides that the contract shall be awarded as, in the judgment of the mayor and common council, shall be for the interest of the city, and that the party to whom such contract shall be awarded shall give such surety as may be prescribed by the mayor and comptroller. Here is then a repeal of the charter provisions so far as this contract for cleaning streets is concerned, a contract, perhaps the largest and most important to be awarded by the city. In the *People* agt. *O'Brien* (*supra*), the provisions relating to the election of councilmen contained in the tax levy of 1866 were declared unconstitutional, because in effect they operated as an amendment to the city charter, and were foreign to the legitimate subjects of the tax levy. This decision leads to the conclusion that it is no part of the province of the annual act providing for the current expenses of the city government to alter the provisions of the charter, the organic law of the municipality. The reason of that decision controls the present case; if the provisions of the charter can be suspended or abrogated as to any particular subject of municipal control, concerning which an annual appropriation of money must be made, they may be suspended or abrogated — in effect repealed — so far as they relate to the vast number of matters embraced in the tax levies; and while the charter exists as the supposed limitation of power of the corporate officers, the annual levies

may, in effect, provide temporarily for an entirely different administration of municipal affairs, removing restrictions, extending former powers, granting new ones, and changing the scheme of city government from year to year.

The necessity for a strict application of the constitutional provision, concerning local bills (*Const.*, *art.* 3, *sec.* 16), was never greater than in the case before us, in view of the abuses that might result, and have resulted from it. It is not pretended that the contract in suit was awarded to the lowest bidder. The manner in which it was procured leaves no doubt that bribery was resorted to to obtain it.

The contractor himself, when placed on the stand, testified that while his bid was under consideration by the common council, he received an anonymous communication, suggesting that if he deposited $40,000 in a certain place, his bid would be confirmed; that he got some money (he declined to say if it was $40,000) from Mr. Hope, took it to a room in the city hall, and left it in a package on a table there; no person was in the room when he left the package, but there was a crowd of persons outside the room, several aldermen among them, whom he mentioned by name. That night his bid was confirmed.

Perhaps it was to prevent this " exercise of discretion " in the common council, as to the award of such bids, that a special statute was passed the next year (*Laws of* 1861, *chap.* 308, *secs.* 1 *and* 2), providing that all contracts should thereafter be awarded to the lowest bidder, and specially providing that this very contract, and the road contract mentioned in the act under consideration, should be awarded to the lowest bidder. The charter had contained such a provision, and it was to remove that restriction that the provision as to this contract was inserted in the tax levy, leaving it to be awarded " as, in the judgment of the mayor and common council, shall be for the interest of the city."

It is entirely without reluctance that I come to the conclusion, that the provision of the tax levy of 1860, authorizing

the making of the contract in suit, was unconstitutional and void, and that the contract cannot be enforced by the contractor or his assignees and successors. For this reason, alone, the judgment should be reversed; but, there is another which, if my view be correct, would prevent a recovery by the plaintiff or the other assignees. The due and proper performance of the work of cleaning the streets affects the whole population of the city, whether it regards their health or their convenience. When the public officers, who are charged with this duty, are permitted to contract for it with public citizens, under provision of law directing them to award the contract as in their judgment shall be for the interest of the city, there is an implied discretion to be exercised as to the character of the person to whom it shall be awarded, as well as to the terms of the contract or the price; and, even if the contract to Hackley were valid, he would have no right to assign it to others without the express sanction of the common council. If they selected him as a fit person to perform the work, as we must infer they did, what right had he to substitute the performance of strangers in lieu of his own without the consent of the city? and whether the contract were to be awarded at discretion to any bidder, or to the lowest bidder only, there is every reason for holding that the contract is not assignable except by consent of the city. Section 47 of the charter of 1857, declares that no bid shall be accepted from, or contract awarded to, any person who is in arrears to the corporation upon debt or contract, or who is a defaulter as surety or otherwise upon any obligation to the corporation. Would an assignment of the contract to such a person be valid? and yet, if the power of assignment were absolute, it might be. The making of such a contract is in some sense a delegation of a public duty to a private person, to be performed for the public benefit. A notorious defaulter, or disgraced public official, whose connection with any public work would be circumstance of grave suspicion and alarm in the public mind, might, by assignment from the original contractor, be put in

control of public works, and be vested with the peformance of public duties with which no officer or department of the municipal government would venture originally to intrust him. The services of the contractor are essentially personal. His personal character and ability and solvency are considerations that enter largely into the discretionary exercise of powers such as were attempted to be conferred by the tax levy act in question. The authorities strengthen this view. The case of *Robeson* agt. *Drummond* (2 *B. & Ad.*, 303) was that of a contract to furnish, for a term of years, a coach for the use of the defendant. The contractor transferred his contract to a third party, and the court held that the contract might, for that reason, be terminated by the other party; and the plaintiff, suing as assignee, was not allowed to recover damages on proof of his offer to perform and a refusal. The case of *Stevens* agt. *Benning* (1 *K. & J.*, 168; 6 *De G., M. & G.*, 223), was that of a contract between an author and a publisher, by which the latter was to publish the works of the former. The publisher assigned his contract, and his assignee was not allowed to recover upon the refusal of the defendant to allow him to publish his productions. The principle of those decisions applies with greater force to the case of a contractor with a municipal corporation, where the contract has been awarded, not to the lowest bidder, but in the exercise of discretion as to what award was for the interest of the city.

The judgment should be reversed and judgment absolute entered for the defendants, the mayor, aldermen and commonalty of the city of New York, against the plaintiff and the other defendants, with costs.

Other reasons might be assigned for reversing this judgment, but we prefer to put it upon the foregoing grounds, as it authorizes a final judgment for defendants, the mayor, aldermen, &c., of New York.

DALY, C. J., and LOEW, J., concurred.